L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
nick.vassallo@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NORTHERN ARAPAHO TRIBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 0:21-cv-00037-NDF |
| | ) | |
| NORRIS COCHRAN, in his official | ) | |
| capacity as Acting Secretary, U.S. | ) | |
| Department of Health and Human Services | ) | |
| ELIZABETH FOWLER, in her official | ) | |
| capacity as Acting Director, Indian Health | ) | |
| Service | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, by counsel, respectfully submit this Brief in Support of their Motion to Dismiss.

## I.  INTRODUCTION

Plaintiff Northern Arapaho Tribe claims that the Indian Health Service ("IHS") breached its contractual obligations pursuant to the Indian Self Determination and

Education Assistance Act ("ISDEAA") (codified as amended at 25 U.S.C. § 5301, *et seq*.). The monetary damages Plaintiff seeks, however, are not authorized by the ISDEAA as a matter of law.  Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

## II. <u>LEGAL BACKGROUND</u>

IHS delivers health care to more than two million American Indians and Native Alaskans directly through IHS facilities and indirectly through ISDEAA contracts. *See* 25 U.S.C. §§ 13 ("Snyder Act"), 1601–83 ("Indian Health Care Improvement Act" ("IHCIA")), 5301, *et seq*.  Through the Snyder Act, Congress provided broad authority for expenditures of "such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians," for the "relief of distress and conservation of health." 25 U.S.C. § 13.  Congress later enacted the Indian Health Care Improvement Act (IHCIA), 25 U.S.C. §§ 1601–83, which more specifically authorizes particular Indian health initiatives with the goal of improving the health of American Indians and Alaska Natives, such as alcohol and substance abuse treatment, diabetes prevention and treatment, health professional training, and urban Indian health.  IHS relies on both of these statutes to develop the numerous health care programs, functions, services, and activities (PFSA) that it directly operates.

Direct health care services are provided at "service units" grouped within 12 regional IHS Areas which, in turn, are overseen by a Headquarters Office.  Funds for the delivery of health care services come from both the Congressional appropriation and reimbursements from third-party payers, including Medicare, Medicaid, and private

insurance carriers.  IHS's use of such collections (also called "program income" or "third party revenue") is governed by the IHCIA, which authorizes IHS to return such collections to each individual IHS health care service unit. *See, e.g.*, 42 U.S.C. § 1395qq; *see also* 25 U.S.C. §§ 1621f, 1641.

With the passage of the ISDEAA in 1975, Congress authorized tribes to contract with the Secretary of the U.S. Department of Health and Human Services, through IHS, to operate many of the programs that IHS previously operated for the benefit of Indians.  The ISDEAA's purpose is to facilitate Indian self-determination by allowing a tribe or tribal organization to take over operations of an IHS or Bureau of Indian Affairs program operated for the benefit of Indians because of their status as Indians.

The ISDEAA provides two types of funding to ISDEAA contractors: the "Secretarial amount" and contract support costs (CSC).  The "Secretarial amount" or "section 106(a)(1) amount" "shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs . . . without regard to any organizational level within [HHS], . . . including supportive administrative functions . . . ." *Id*. § 5325(a)(1).  Thus, the Secretarial amount explicitly includes funding for all activities, including administrative activities, that IHS also carried out in its operation of the contracted programs, functions, services and activities (PFSA).

In 1988, Congress amended the ISDEAA to authorize CSC funding in addition to the Secretarial amount to reimburse the additional, reasonable costs for activities that tribes must carry out to ensure contract compliance and prudent management, but that were not activities funded as part of the Secretarial amount, either because the Secretary does not

normally carry on the activities or because the Secretary provided for those activities from resources other than those transferred under the contract. Pub. L. No. 100-472, § 205, 102 Stat. 2285, 2292-94 (1988) (codified at 25 U.S.C. § 5325). The statute provides for two general categories of CSC: direct CSC and indirect CSC. Direct CSC is available for eligible contract administration expenses related directly to the operation of the ISDEAA PFSA.[1]   25 U.S.C. §§ 5325(a)(3)(A)(i). Indirect CSC is available for eligible administrative or other contract administration expenses related to the overhead incurred by a tribal contractor.[2] *Id.* §§ 5325(a)(3)(A)(ii). The ISDEAA explicitly prohibits IHS from paying CSC funding for activities already funded in the Secretarial amount. *Id.* §§ 5325(a)(2)-(3).

In addition to the funding provided through the ISDEAA contract, tribes (like IHS) can earn "program income" by collecting reimbursements from third-party payers. For example, tribes may directly bill and collect reimbursements from Medicare and Medicaid, 25 U.S.C. § 1641(d), private insurance companies, § 1621e(a), workers' compensation funds, § 1621e(b), and tortfeasors, § 1621e(e)(3)(A).

When a dispute arises after the ISDEAA contract is awarded, a tribe must pursue a claim for breach of contract pursuant to the requirements of the Contract Disputes Act of

---

[1] A common example of direct CSC is workers' compensation paid to states for employees of the health facility, as federal agencies do not pay into state-run workers compensation programs.

[2] Indirect costs are pooled overhead costs that benefit more than one program, such as the costs of conducting audits.

1978 (CDA), 41 U.S.C. § 7101, *et seq. See* 25 U.S.C. § 5331(a), (d) (incorporating requirements of the CDA for breach of contract claims).  After exhausting administrative remedies, a Tribe may bring an action in federal court to challenge a contracting officer's decision. 41 U.S.C. § 7104(b)(1), (3); *see also* 25 U.S.C. § 5331(a) (allowing a Tribe to proceed in the Court of Claims or in a district court).

## III.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Northern Arapaho Tribe is a federally recognized tribe occupying the Wind River Reservation in Wyoming.  Plaintiff entered into a Title I ISDEAA contract[3] with IHS in 2016 to operate certain PSFAs that IHS would otherwise provide to the Tribe's members and other eligible IHS beneficiaries.  During the specific years at issue (FYs 2016 and 2017), the Tribe operated these programs pursuant to Contract No. HHSI244201600002C.  Each year, the parties enter into an Annual Funding Agreement (AFA) pursuant to the contract and the ISDEAA, which outlines the amount of funding IHS would transfer to the Tribe that year to carry out the PFSAs under the contract. *See* 25 U.S.C. § 5329(c).

During the fiscal years at issue, IHS paid the Tribe a Secretarial amount as well as CSC.  The amount of CSC was calculated based on a negotiated indirect cost rate.  Neither the Secretarial amount nor the negotiated indirect cost rate are in dispute here.  Rather, the

---

[3] Tribes contract with IHS under Title I of the ISDEAA, 25 U.S.C. §§ 5321-5332, and also enter "self-governance compacts" under Title V of the ISDEAA, *id*. §§ 5381-5399. A Title V compact is a more advanced form of contracting achievable after three years of successful contracting under Title I.  Here, the Tribe and IHS entered into a Title I contract.

Tribe claims that it is entitled to additional CSC based on third party revenues it generated during FY 2016 and 2017.

By letters dated May 30, 2019, the Northern Arapaho Business Council asserted that "IHS failed to pay CSC associated with the portion of the Tribe's federal health care program funded by third-party revenues, such as payments from Medicare, Medicaid, and private insurance." Compl. ¶ 38. The Tribe requested a contracting officer's decision under the Contract Disputes Act (CDA). *Id*. ¶ 7. Specifically, the Tribe claimed that under ISDEEA Contract No. HHSI244201600002C, IHS "failed to pay CSC associated with the portion of the Tribe's federal health care program funded by third-party revenues, such as payments from Medicare, Medicaid, and private insurance." *Id*. ¶ 38.

With regard to FY 2016, the Tribe claims it is entitled to a total of $538,936 for IHS' failure to pay CSC on expended third party-revenues. Specifically, the Tribe alleges that it "expended $2,168,546 in third-party revenues" and that "[a]pplying the Tribe's negotiated indirect cost rate of 24.49% to expenditures of third-party revenues of $2,168,546 yields a claim for unpaid indirect costs in the amount of $531,077." Compl. ¶ 32. The Tribe also alleges that it "expended $103,321 in third-party-funded salaries" and claims that applying a fringe benefit differential of 6.11% to the $103,321 "yields a claim for unpaid direct CSC of $6,313." *Id*. ¶ 34. Finally, the Tribe claims that applying the negotiated indirect cost rate of 24.49% to the direct CSC amount of $6,313 "produces a claim of $1,546." *Id*.

With regard to FY 2017, the Tribe claims it is entitled to a total of $1,001,201 for IHS's failure to pay CSC on expended third party-revenues. *Id*. ¶ 37. Specifically, the

Tribe alleges that it "expended $6,179,246 in third-party revenues" and that "[a]pplying the Tribe's negotiated indirect cost rate of 11.77% to expenditures of third-party revenues of $6,179,246 yields a claim for unpaid indirect costs in the amount of $727,297." *Id*. ¶ 35.  The Tribe also alleges that it "expended $3,351,858 in third-party-funded salaries," and claims that, applying a fringe benefit differential of 6.11% to the $3,351,858 "yields a claim for unpaid direct CSC of $204,799." *Id*. ¶ 36. Finally, the Tribe claims that applying the negotiated indirect cost rate of 11.77% to the direct CSC of $204,799 "produces a claim of $24,105." *Id*. ¶ 37.

In support of these claims, the Tribe asserts that the Secretarial amount is not the correct base for calculating CSC.  It contends that IHS must add third party revenues to the Secretarial amount in order to calculate the CSC owed to the Tribe under the ISDEAA, the contract and the AFA.  However, nothing in the ISDEAA, the contract or the AFA support this position. Accordingly, by letter dated February 20, 2020, the IHS denied the Tribe's claims for additional contract support costs.  Compl. ¶ 39.  The Tribe filed this action on February 19, 2021.  ECF No. 1.

## IV.  STANDARD OF REVIEW

"In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The standard of review under the CDA is *de novo*. 41 U.S.C. § 7104(b)(4); *see also TLT Constr. Corp. v. United States*, 60 Fed. Cl. 187, 193 (Fed. Cl. 2004) (citing *Assurance Co. v. United States*, 813 F.2d 1202, 1205 (Fed. Cir. 1987)). The CDA requires that Plaintiff bears the burden of proof. *See J.C. Equip. Corp. v. England*, 360 F.3d 1311, 1318 (Fed. Cir. 2004); *Sociotechnical Research Applications v. Whitman*, 29 F. App'x 578, 582 n.2 (Fed. Cir. 2002) ("The contractor will have the burden of proof to establish that it suffered actual damages, over and above the amount already paid by the government"); *Ketchikan Indian Cmty. v. Dep't of Health & Human Servs.*, Nos. CBCA 1053-ISDA, 1054-ISDA, 1055-ISDA, 2013-1 BCA (CCH) ¶ 35,436 (dismissing claims not presented to contracting officer and finding facts relevant to CSC claims include "establishing that a particular cost is a CSC"). The Tribe "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *Allen v. United States*, 140 Fed. Cl. 550, 560 (Fed. Cl. 2018) (citing *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Moreover, "there is a minimum burden for a plaintiff, in asserting a breach of contract claim, to explicitly identify the provisions and terms of the contract that have been breached." *Id.* (quoting *Gonzalez-McCaulley Inv. Grp. v. United States*, 93 Fed. Cl. 710, 715 (2010)).

In interpreting the ISDEAA's provisions, this Court should begin with the

"language of the statute." *Red Lake Band of Chippewa Indians v. U.S. Dept. of Interior*, 624 F. Supp. 2d 1, 24 (D.D.C. 2009) (quoting *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 450 (2002)). "If Congress has directly spoken to the issue, that is the end of the matter." *Confederated Tribes of Grand Ronde Cmty. of Oregon v. Jewell*, 830 F.3d 552, 558 (D.C. Cir. 2016) (citing *Citizens Exposing Truth About Casinos v. Kempthorne*, 492 F.3d 460, 465 (D.C. Cir. 2007)).   Only if the terms are ambiguous should they be "construed liberally" to the benefit of the tribes. *See id*. (quoting *Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1266 n.7 (D.C. Cir. 2008)). Even so, this canon may not be determinative of how to read the ISDEAA. *Accord, Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) ("[T]o accept as conclusive the canons on which the Tribes rely would produce an interpretation that we conclude would conflict with the intent embodied in the statute Congress wrote.").

## V.  <u>ARGUMENT</u>

There is no dispute that IHS must pay the CSC pursuant to its ISDEAA contract with the Tribe in full.  *See Salazar v. Ramah Navajo Chapter,* 567 U.S. 182, 185 (2012). Indeed, consistent with its statutory and contractual obligations, IHS did pay the Tribe's full CSC on expenditures from the Secretarial amount that was transferred and funded by IHS.  Although the Tribe claims that IHS owes it CSC on program income that was not transferred or funded by IHS, it is mistaken.  Neither the ISDEAA nor the relevant contract or annual funding agreements require the Government to pay CSC on revenues that were generated by third parties.

**A.  The ISDEAA Does Not Require or Authorize the IHS to Pay Contract Support Costs on Program Income**

As stated above, the ISDEAA requires IHS to pay two different funding types to IDEAA contractors.  The first is direct program costs, *i.e.,* the "amount of funds … not … less than [IHS] would have otherwise provided for the operation of the programs … for the period covered by the contract." 25 U.S.C. § 5325(a)(1).  The ISDEAA also requires payment of CSC for "reasonable and allowable" costs necessary to "reimburse" tribes for direct and indirect costs not covered by the Secretarial amount.  *See* 25 U.S.C. §§ 5325(a)(2), (3)(A).  Neither of the funding types expressly authorized by the ISDEAA make any mention of third-party revenue or program income.  *San Carlos Apache Tribe v. Azar,* 482 F. Supp. 3d 932, 934-36 (D. Ariz. 2020) (citing *Swinomish Indian Tribal Community v. Azar,* 406 F. Supp. 3d 18, 27-28 (D.D.C. 2019), *aff'd* 993 F.3d 917 (D.C. Cir. 2021)).  Indeed, nothing in the ISDEAA defines CSC to cover anything other than the Secretarial amount.  *See* 25 U.S.C. § 5325(a)(2).  Regarding program income, the ISDEAA provides only that program income cannot serve as a basis for reducing funds "otherwise obligated to the contract"—*i.e.*, the Secretarial amount plus CSC funding calculated on the Secretarial amount. *See, e.g., id.* § 5325(m)(2).

Recently, in *Swinomish Indian Tribal Community v. Becerra,* 993 F.3d 917, 920 (D.C. Cir. 2021), the U.S. Court of Appeals for the D.C. Circuit ruled that the ISDEAA did not require IHS to pay CSC on third-party revenue.  The court explained:

> First, when the Act speaks of contract support costs, it does not mention money received from third parties, like insurance providers. Instead, the Act says reimbursements for contract support costs cover activities that "ensure

compliance with the terms of the contract" conducted by the tribe "as a contractor." 25 U.S.C. § 5325(a)(2) (emphasis added).

The scope of contract support costs is thus limited to those under one "contract" — the one between a "contractor" (the tribe) and the contracting agency (Indian Health Service). In that contract, a tribe promises to provide certain services to its community. In exchange, the government promises to provide the tribe with a certain amount of money — the secretarial amount — for those services. Then, on top of that, the Act requires additional government funding to cover a tribe's cost of complying with the terms of that contract.

To be sure, other contracts affect the tribe's budget. A patient might have a contract with a private insurer. Another patient may have Medicare or Medicaid. In those instances, billing patients' insurers may lead to more money for the tribe. But the Act doesn't require the government to pay for contract support costs on money generated from those other contracts — just for money paid by Indian Health Service for "the contract."

The Act repeatedly reinforces this limited scope for the contract support costs it requires. For example, it guarantees reimbursement for contract support costs incurred while operating "the Federal program that is the subject of the contract" or "the Federal program, function, service, or activity pursuant to the contract." *Id*. § 5325(a)(3)(A)(i)-(ii) (emphases added).

Second, just as the Act speaks of contract support costs without any mention of insurance money, it elsewhere speaks of insurance money without any mention of contract support costs. It refers to insurance money at 25 U.S.C. § 5388(j) and § 5325(m) — all without a mention of contract support costs.

In *San Carlos Apache Tribe,* the U.S. District Court for the District of Arizona similarly rejected a Tribe's argument that CSC must be paid on third party revenue. The court's decision, it noted, was "principally informed by the language of 25 U.S.C. § 5325(a), which outlines the funds IHS must provide to federally recognized Indian tribes under self-determination contracts such as the one entered into between IHS and the Tribe." *Id*. at 934. The court observed that none of the provisions in § 5325(a) "makes any

reference to third-party revenue." *Id*.  The court also found that the language in §5323(m) was relevant and "further bolstered" its "conclusion regarding the meaning of § 5325(a)."

> Numerous subsections within § 5325(a) refer to funds that are "provided" by the Secretary as part of the Secretarial Amount. *See* 25 U.S.C. §§ 5325(a)(1); (a)(3)(A). Other subsections refer to contract support costs that must be "paid" by the Secretary. *See id*. at § 5325(a)(5) ("[D]uring the initial year that a self-determination contract is in effect, the amount to be paid under paragraph (2) shall include ....");  § 5325(a)(6) ("Costs incurred before the initial year that a self-determination contract is in effect may not be included in the amount required to be paid under paragraph (2) if ...."). In contrast, § 5325(m) -- the only section in § 5325 concerning program income (and accordingly, third-party revenue) -- refers to "income earned by a tribal organization in the course of carrying out a self-determination contract." (emphasis added). The Court therefore agrees with the court in *Swinomish Indian Tribal Community* that "[r]ead together, the ISDEAA's various provisions clearly limit the Secretarial amount to funds that the IHS appropriates and exclude from that amount any third-party revenue that the Tribe collects on its own."  406 F. Supp. 3d at 29. Contract support costs accordingly need not be provided for expenditures of third-party revenue.

*Id*. at 936.

Here, Plaintiff claims that its collection and expenditure of third-party revenue gives rise to CSC because those "funds are part of the Federal program carried out by the Tribe under its ISDEAA agreements." *See* Compl. ¶ 23.[4]  In support of this argument, Plaintiff relies upon the "federal program" language in 25 U.S.C. § 5325(a)(3)(A).  The same

---

[4] Plaintiff also mistakenly contends that it is "required to bill responsible parties" by 25 U.S.C. § 1623(b)  *See* Compl. ¶ 20.  While the Tribe may choose to obtain reimbursements from Medicare, Medicaid and other third-party payers, 25 U.S.C. § 1623(b) does not require it to do so.  Rather, it provides only that the Tribe will be a payer of last resort to the extent there is a dispute among potential payers.  It protects the Tribe from being forced to pay for items and services for which third parties are responsible, but it imposes no obligation on the Tribe.

argument was soundly rejected in *San Carlos Apache*, where the court provided the

following analysis:

> While the Tribe argues the "Federal program" language in 25 U.S.C. §
> 5325(a)(3)(A) signifies Congress' intent that IHS pay contract support costs
> on "all healthcare activities carried out pursuant to the Tribe's contract with
> IHS. . . ," to accept this argument would be to read language into the statute
> that is not there and in effect enlarge it so that what was omitted, presumably
> by inadvertence, may be included within its scope. To supply omissions
> transcends the judicial function. Moreover, this argument ignores the
> language that is there, as § 5325(a)(3)(A) refers to a single "Federal program
> that is the subject of the contract." 25 U.S.C. § 5325(a)(3)(A)(i); 25 U.S.C.
> § 5325(a)(3)(A)(ii) (including as contract support costs eligible for
> reimbursement costs of "any additional administrative or other expense
> related to the overhead incurred by the tribal contractor in connection with
> the operation of *the* Federal program . . . pursuant to the contract (emphasis
> added)). It would be unreasonable to construe this program as anything other
> than the program or programs IHS would be charged with operating absent
> an ISDEAA contract.

*Id.* at 935 (internal quotations and citations omitted).  The D.C. Circuit reached the same

conclusion in *Swinomish*:

> Swinomish points out that the Act requires the government to fund any
> contract support cost related to "the Federal program." Id. §
> 5325(a)(3)(A)(i)-(ii). But in the context of the Act, "the Federal program"
> does not encompass spending insurance payments. As covered above, those
> sections refer to "the Federal program that is the subject of the contract" and
> "the Federal program, function, service, or activity pursuant to the contract."
> *Id*. (emphases added).
>
> Swinomish is correct to say that it spends insurance money on health
> services. But it also can spend money from the Tribe's general treasury on
> health services. And if a tribe receives private or public grant funding, it can
> spend that money on health services as well. If you take Swinomish's theory
> of the scope of "the Federal program" to its logical conclusion, Indian Health
> Service would be on the line for unlimited contract support costs based on
> the unlimited sources of outside-the-contract funding available to a tribe.
> That's not what the Act requires.

Id. at 921.

Congress has been clear that CSC reimbursements are authorized only in support of costs that are *directly* attributable to the parties' ISDEAA agreement. 25 U.S.C. § 5326. Section 5326 states:

> Before, on, and after October 21, 1998, and notwithstanding any other provision of law, funds available to the [IHS] in this Act or any other Act for Indian self-determination or self-governance contract or grant support costs may be expended only for costs directly attributable to contracts, grants and compacts pursuant to the Indian Self-Determination Act and no funds appropriated by this or any other Act shall be available for any contract support costs or indirect costs associated with any contract, grant, cooperative agreement, self-governance compact, or funding agreement entered into between an Indian tribe or tribal organization and any entity other than the [IHS].

25 U.S.C. § 5326. This provision has been interpreted as "expressly prohibit[ing] the funding of indirect costs 'associated with' non-IHS entities." *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 418 (D.D.C. 2008), *reconsideration denied*, 655 F. Supp. 2d 62 (2009). In *Tunica-Biloxi Tribe,* tribal contractors claimed IHS failed to pay the full CSC amount in breach of their ISDEAA contracts. The court held that in light of the plain meaning of § 5326, the only reasonable interpretation of § 5325(a)(2) is that it requires IHS to only pay CSC for indirect costs that are properly allocated to IHS. *See id*. at 422-23.

The *San Carlos Apache* court found that 25 U.S.C. § 5326 "dooms the Tribe's claim." *San Carlo*s at 936. It concluded that while the Tribe's third-party revenues were "attributable" to the IHS contract, they were not "directly attributable" to it. "For 'directly' to be given effect," the court reasoned, "it must be construed to limit the contract support

costs Indian tribes can receive to costs of administering programs that are funded by IHS under IHS contracts." *Id*. at 937.

It should also be noted that third-party payments are themselves designed to provide reimbursement not only for the direct costs of providing care, but also for indirect costs associated with those services. *See generally* CMS, HHS, *Provider Reimbursement Manual*, ch. 21 § 2102.1 (stating that under Medicare "[r]easonable cost takes into account both direct and indirect costs of providers . . . ."); CMS, HHS, *State Medicaid Manual*, ch. 6 § 6303 (applying Medicare reimbursement principles). Health care expenditures of third-party revenues would thus not, as a general matter, need to be subsidized with other funds to account for overhead. *Accord, Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1464 (10th Cir. 1997) ("nothing in the Act entitles a tribe to a windfall or requires defendants to ignore indirect costs funding a tribe receives from other sources") (overruled by statute on other grounds, *see Tunica-Biloxi Tribe* at 418).

In its Complaint, the Tribe cites *Navajo Health Foundation – Sage Memorial Hospital, Inc. v. Burwell*, 263 F.Supp. 3d 1083 (D.N.M 2016) in support of its "federal program" argument. *See* Compl. ¶ 23. While that decision may be of interest because it was issued by a district court in this Circuit, the opinion is not persuasive and should not be followed by this Court. In *Sage Memorial*, a tribal contractor presented claims to an IHS contracting officer for unpaid CSC, including CSC for costs allocable to the portion of the tribal program funded by third-party reimbursements such as Medicare and Medicaid as well as the tribally-funded portion of the program. *See* 263 F. Supp. 3d at 1088. The court found that Medicare and Medicaid reimbursements were part of the federal program

that the plaintiff took over under the ISDEAA contract. *See id*. at 1163-66. The court also noted that § 5325(m) provides that program income earned cannot be a basis for reducing the amount provided under the contract, and found without explanation that the plaintiff was entitled to receive CSC on that program income. *See id*. at 1166-68.

The reasoning of *Sage Memorial* is not persuasive, and this Court should not adopt its conclusions. The decision is lengthy, but it does not address the meaning of § 5326 or how § 5325(a)(2) and (3)(A) should be interpreted in light of § 5326. *See, e.g.*, 1163-68. It does not address the fact that Medicare, Medicaid, and other third-party payments are non-IHS funds. It does not address the fact that by statute, Medicare and Medicaid payments already reimburse providers for direct and indirect costs associated with providing those health care services. Thus, it offers no convincing reason why such funds should be considered part of the Secretarial amount or were entitled to CSC payments.

Indeed, the *San Carlos Apache* court described *Sage Memorial* as "not persuasive" and rejected its reasoning:

> While the *Sage Memorial* court answered that question in the Tribe's favor, it did not do so persuasively, as it did not engage with the text of any of the statutes discussed above. Instead, that court analyzed language in the plaintiff's annual funding agreements and two other statutes, the Indian Health Care Improvement Act and the Patient Protection and Affordable Care Act. *Id*. at 1164-65. A court must "start with the text of the statute" at issue and 25 U.S.C. § 5325, at least, was at issue there and is here. *See  Babb v. Wilkie*, —— U.S. ——, ——, 140 S. Ct. 1168, 1172, 206 L.Ed.2d 432 (2020) (internal citation omitted). Because the *Sage Memorial* court all but ignored the text of  25 U.S.C. § 5325, its decision is not persuasive.

*San Carlos Apache* at 940.

Finally, while the Indian canon of statutory construction applies in ISDEAA cases,

it is not determinative in this case.

> 'For one thing, canons are not mandatory rules. They are guides that need
> not be conclusive.' *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122
> S.Ct. 528, 151 L.Ed.2d 474 (2001) (internal quotation marks and citation
> omitted). More importantly, '[t]he canon of construction regarding the
> resolution of ambiguities in favor of Indians ... does not permit reliance on
> ambiguities that do not exist; nor does it permit disregard of the clearly
> expressed intent of Congress.' *See South Carolina v. Catawba Indian Tribe,
> Inc.*, 476 U.S. 498, 506, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) (footnote
> omitted). Indeed, the Indian canon of statutory construction is more of a
> tiebreaker. Based on the issues discussed above, neither 25 U.S.C. § 5325
> nor § 5326 is fairly capable of two interpretations and therefore ambiguous.
> Because there is accordingly no tie to break, that canon is of no consequence.

*San Carlos Apache* at 940-41. *See also Swinomish*, 406 F. Supp. 3d at 25.

### B.  The Parties' Contract Does Not Require or Authorize IHS to Pay Contract Support Costs on Program Income

Defendants do not dispute that it must pay the CSC owed to the tribe by virtue of

the ISDEAA contract between the parties.  However, nothing in the contract or fund

agreement obligates IHS to pay CSC on program income or third party revenue.  Plaintiff

points to two provisions in the ISDEAA contract and AFA to support its breach of contract

claim.  Neither provision obligates the Government to pay CSC on third party revenues.

The first provision states the Tribe will maintain accreditation standards in order to

qualify for third party revenues such as Medicare or Medicaid.  (Compl., ¶ 21).

Specifically, the contract states:

> The Tribe's Business Office. . . will maintain accreditation standards in order
> to qualify for fund through third-party payers [sic].  Medicare and Medicaid
> numbers for billing purposes will be secured in order to meet the
> requirements of the Centers for Medicaid and Medicare Services (CMS) and
> Medicaid contracts with Managed Care Organizations (MCOs).  Other

requirements will be met for periodic renewal of accreditation or certification in order to continue to maintain eligibility for these funds.

(Compl. ¶ 21).  While this provision obligates the Tribe to maintain eligibility for certain types of program income, it does not obligate the IHS to provide CSC on program income.

The other contractual provision cited by the Tribe merely requires the Government to pay CSC in accordance with the ISDEAA.  (Compl. ¶ 49 (citing AFA § 5) ("contract support costs (CSC) will be paid in accordance with 25 U.S.C. § 5325").  The Government has met its contractual obligation because, as discussed supra, it has paid all CSC required by the ISDEAA.  The Tribe has not identified a contractual provision that obligates the Government to pay any more CSC than it has already provided for FY 2016 and 2017.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.


Respectfully submitted this 21st day of May, 2021.


L. ROBERT MURRAY
Acting United States Attorney

By: /s/ Nicholas Vassallo
NICHOLAS VASSALLO
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on May 21, 2021, a copy of this Brief in Support of Defendants' Motion to Dismiss was filed with the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Rob Gaulke*
ROB GAULKE
United States Attorney's Office
