L. Robert Murray
Acting United States Attorney
Nicholas Vassallo (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
nick.vassallo@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| NORTHERN ARAPAHO TRIBE, | |
| Plaintiff, | |
| v. | Case No. 0:21-cv-00037-NDF |
| NORRIS COCHRAN, in his official capacity as Acting Secretary, U.S. Department of Health and Human Services ELIZABETH FOWLER, in her official capacity as Acting Director, Indian Health Service UNITED STATES OF AMERICA, | |
| Defendants. | |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants, by counsel, respectfully submit this Reply Brief in Support of their Motion to Dismiss.

1. ***Standard of Review***

In its discussion of the "standard of review," Plaintiff asserts that in determining a 12(b)(6) motion, "the court presumes that all well-pleaded allegations are true." Pl.

Opposition at 9. While this rule applies to "well-pleaded facts," it does not apply to "conclusory allegations," *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010), nor does it apply to legal arguments. The presumption of truth given to factual allegations on a 12(b)(6) motion is of no consequence here, as Defendants' motion is based on purely legal, not factual, grounds.

### 2. *Plaintiff is generally not required, by statute or contract, to seek third-party reimbursement from Medicare or Medicaid.*

Most, if not all, of Plaintiff's arguments are expressly based on the premise that Plaintiff is "required by law and contract to collect" reimbursements from non-IHS sources, particularly Medicare and Medicaid. *See* Pl. Opposition at 2, 7, 10, 16, 19, 20, 21. In support of this premise, Plaintiff relies on one statutory provision and one contractual provision. As discussed in Defendants' opening brief, the cited statutory provision, 25 U.S.C. § 1623(b), provides only that the Tribe will be a payer of last resort to the extent there is a dispute among potential payers. It protects the Tribe from being forced to pay for items and services for which third parties are responsible, but it imposes no obligation on the Tribe. Likewise, the cited contractual provision, § IV.C of the Scope of Work (Plaintiff's Ex. C), simply does not impose a requirement that Plaintiff bill third parties for reimbursement. Thus, a major premise which underlies Plaintiff's position is unsupported.[1]

---

[1] Congress only requires tribes to collect reimbursement for services they choose to provide to patients who are ineligible to receive IHS services. *See* Consolidated (continued...)

3. ***<u>Third-party payments already include reimbursements for direct and indirect costs.</u>***

Under the ISDEAA, Congress has authorized payment of CSC for "reasonable and allowable" costs necessary to "reimburse" tribes for direct and indirect costs not covered by the Secretarial amount, not to provide tribes with recovery of costs already reimbursed as part of funds received from non-IHS sources, including Medicare, Medicaid, and other third-party collections. *See* 25 U.S.C. §§ 5325(a)(2), (3)(A).  To the extent Plaintiff has expended reimbursements it obtained from the Medicare and Medicaid programs, those reimbursements already include direct and indirect costs associated with providing those services.

To the extent Plaintiff is seeking Medicare reimbursement for outpatient services provided, tribal programs may receive reimbursements as Federally-Qualified Health Centers ("FQHCs"). *See* 42 U.S.C. § 1395x(aa)(4).  FQHCs are reimbursed based on a Prospective Payment System ("PPS"). *See* 42 C.F.R. § 405.2462(c).  Tribal health clinics may also receive reimbursement as Rural Health Clinics ("RHCs"). *See* 42 U.S.C. 1395x(aa)(2).  RHCs are reimbursed based on an all-inclusive rate, which is based on reasonable cost principles. *See* 42 C.F.R. § 405.2462(a)-(b).  Under either reimbursement

---

Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786, 1029 (2011) ("non-Indian patients may be extended health care at all tribally administered or [IHS] facilities, subject to charges").  For any services provided to ineligible persons, a Tribe must obtain full payment from the patient, his/her insurance, etc., for the actual costs of the health services provided. Thus, although tribes may provide health care services to ineligible persons, Congress expressly requires that the tribes recover their costs from those ineligible persons rather than IHS. *See id*.

system, Medicare payments include reimbursement for direct and indirect costs associated with providing Medicare services. *See generally* Centers for Medicare & Medicaid Services ("CMS"), Provider Reimbursement Manual, Ch. 21 § 2102.1 ("Reasonable cost takes into account both direct and indirect costs of providers. . . . The objective is that under the methods of determining costs, the costs for individuals covered by the program are not borne by others"); *see also, e.g., id.* § 2122.3 (determining that employment-related taxes are a type of reimbursable administrative costs).

Plaintiff also mentions Medicaid reimbursement as another form of program income it has received. *See, e.g.*, Pl.'s Opposition at 2. Medicaid programs compensate providers for their direct and indirect costs. *See, e.g.*, 42 U.S.C. § 1396a(bb) (requiring state Medicaid programs to fully compensate providers for their reasonable costs). As a tribal health care provider, Plaintiff is entitled to "wrap-around" payments from States if Medicaid managed care plans do not pay the full rate to which Plaintiff is otherwise entitled. *See* 42 U.S.C. § 1396u-2(h)(2)(C)(ii). Accordingly, Plaintiff recovered direct and indirect costs for the care it provided to Medicaid-eligible patients.

4. **<u>Plaintiff's claim is barred by 25 U.S.C. § 5326</u>**.

As observed by Plaintiff, "[T]he *San Carlos Apache* court found an independent bar to the Tribe's claims in 25 U.S.C. § 5326." Pl. Opposition at 19. This Court should likewise find Plaintiff's claims precluded by § 5326, which prohibits payment of CSC on reimbursements from Medicare, Medicaid or any other third parties.

Congress passed § 5326 for the express purpose of overruling the Tenth Circuit's opinion in *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997). *See* Pub. L.

No. 105-277, Div. A, § 101(e) [Title II] (Oct. 21, 1998), 112 Stat. 2681-231, 2681-280 (codified at 25 U.S.C. § 5326); *see also* H.R. Rep. 105-609 at 57, 108, (1998) (expressing "concern" about the decision made by "the court in the [1997 *Ramah Navajo*] case," and "recommend[ing] . . . specifying that IHS funding may not be used to pay for non-IHS [CSC] support costs."); *id*. at 110 (same).  In *Ramah Navajo*, a certified nationwide class of tribal contractors entered into a contract with the Bureau of Indian Affairs ("BIA") and sought to require BIA to expand its CSC to include non-BIA programs (for which the tribal contractors were otherwise unable to recover their direct and indirect costs). *See* 112 F.3d at 1459.  The Tenth Circuit erroneously found that § 5325(a)(2) was ambiguous, liberally construed the provision for the benefit of the plaintiff tribal contractors, and held that the provision required the BIA to increase its CSC to make up for "the failure of other agencies to pay their full share of indirect costs."  *Id*. at 1462.

In response, to clarify the meaning of § 5325(a)(2), Congress promptly passed § 5326, which provides:

> Before, on, and after October 21, 1998, and notwithstanding any other provision of law, funds available to the Indian Health Service in this Act or any other Act for Indian self-determination or self-governance contract or grant support costs may be expended only for costs directly attributable to contracts, grants and compacts pursuant to the Indian Self-Determination Act and no funds appropriated by this or any other Act shall be available for any contract support costs or indirect costs associated with any contract, grant, cooperative agreement, self-governance compact, or funding agreement entered into between an Indian tribe or tribal organization and any entity other than the Indian Health Service.

25 U.S.C. § 5326. Congress thus clarified that § 5325(a)(2) could not be construed to require IHS to pay for the direct and indirect costs associated with agreements or contracts

with any entities other than IHS, even if the tribal contractors could not otherwise recover those costs from those non-IHS sources.

Plaintiff asserts that § 5326 does not bar its claims because "Defendants can point to no other agency [other than IHS] and no other contract to which the indirect costs associated with expending these funds could possibly be allocated." Pl. Opposition at 21. Plaintiff is mistaken. As explained by the court in *San Carlos Apache*,

> The Tribe's third-party revenue could not have been obtained pursuant to its contract with IHS and therefore was not "directly attributable" to it. Even though the Tribe obtained third-party revenue "while administering programs under its contract with IHS," (Doc. 1, ¶ 34), it only could have done so by first entering into agreements with third-party payors and then billing and collecting from them pursuant thereto. *See, e.g.*, Ctrs. for Medicare & Medicaid Servs., U.S. Dep't of Health & Human Servs., Pub. No. 100-01, Medicare General Information, Eligibility, and Entitlement Manual, Ch. 5, § 10.1, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/ge101c05.pdf (listing hospitals, skilled nursing facilities, clinics, rehabilitation agencies, and community mental health centers among "[t]he following provider types" that "must have provider agreements under Medicare"); 42 C.F.R. § 431.107(b) ("A State plan must provide for an agreement between the Medicaid agency and each provider or organization furnishing services under the plan ...."); *see also In re TLC Hosps., Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000) ("In accordance with the terms of the Medicare statute and the regulations promulgated by the Secretary of HHS, a participating facility is reimbursed for the 'reasonable costs' of services rendered to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395x(v)(1)(A), 1395f(b); 42 C.F.R. pt. 413. In order to be reimbursed, however, the participating facility, must agree to certain terms as set forth in 42 U.S.C. § 1395cc." (footnote omitted)); *Neighborcare Health v. Porter*, CASE NO. C11-1391JLR, 2012 WL 13049188, at *1 (W.D. Wash. July 24, 2012) ("As a condition of receiving federal Medicaid funding, the Health Care Authority must have written agreements with medical providers who want to participate in the Medicaid program." (citing 42 U.S.C. § 1396a(a)(27); 42 C.F.R. § 431.107; *Banks v. Sec'y of Ind. Family and Soc. Servs. Admin.*, 997 F.2d 231, 235 (7th Cir. 1993)). Indeed, the Tribe's IHS contract expressly contemplates the Tribe entering into contracts with third parties. [Citation] While such contracts are not alleged in the Complaint, revenue from third parties such as Medicare and Medicaid cannot be collected by virtue of an

agreement to which they are absent. It can therefore hardly be said that the Tribe's third-party revenue was "directly" attributable to its contract with IHS.

*San Carlos Apache* at 938-939.

In its opening brief, Defendants explained that payment of CSC on the expenditure of third-party revenue would result in a windfall to the Tribe because third party payments already reimburse both direct and indirect costs. In response, Plaintiff asserts that this "is irrelevant" because "when the Tribe expends these revenues on additional services, those services generate administrative and overhead costs." Pl. Opposition at 23. Plaintiff further asserts that "[o]nce the third-party payments become part of the 'Federal program' and are expended to provide additional health care services under the contract, they generate new direct and indirect expenses eligible for payment as CSC." *Id.* Plaintiff's argument fails, however, for multiple reasons. First, both the *Swinomish* and *San Carlos Apache* courts have ruled that 5325(a)'s "references to the 'Secretarial amount' to which CSC must be added and the 'Federal Program' that generates CSC do not include third-party revenue." *San Carlos Apache* at 935, quoting *Swinomish*, 406 F. Supp. 3d at 27-28. In addition, as noted in *San Carlos Apache*, third party payments – as a matter of law – are not "directly attributable" to the ISDEAA contract. Moreover, § 5326 clearly prohibits payment of CSC "associated with" third-party contracts or agreements. Costs attributable to expenditures of third-party revenues are undeniably "associated with" the third-party contracts or agreements which generated them.

5. ***Plaintiff's reliance on Pyramid Lake and Seminole Tribe are misplaced.***

Contrary to Plaintiff's contention, *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534 (D.D.C. 2014) does not advance its position. The *Pyramid Lake* court did not address the statutory provisions at issue here (§§ 5325(a)(2), (3)(A), 5326, 5325(m)), nor did it address the amount of CSC to which that tribal contractor was entitled. *See* 70 F. Supp. 3d. at 534-45. *Pyramid Lake* is thus inapposite to the present dispute, and its reference to the "source of funds" is not sufficient to overcome the plain meaning of §§ 5325(a)(2), (a)(3)(A) and 5326.

Although the *Seminole* court discussed *Sage Memorial*, most of that discussion concerned the reasons why that case was distinguishable from *Seminole. See Seminole Tribe of Florida v. Azar*, 376 F. Supp. 3d 100 at 113-114 (D.D.C. 2019). The *Seminole* court's speculative statement that "[i]f the Tribe can show that its other money is program income, *Sage Memorial* may ultimately govern," *id*. at 114, neither accepts nor rejects *Sage Memorial*, is not a binding holding, and does not provide persuasive authority for this Court.

6. ***Conclusion***

As a matter of law, Plaintiff's claim is foreclosed by at least five separate ISDEAA provisions: 25 U.S.C. §§ 5325(a)(1), (a)(2), (a)(3)(A), (m) and 5326. Its complaint should be dismissed.

Respectfully submitted this 25th day of June, 2021.

                                                               L. ROBERT MURRAY
                                                                Acting United States Attorney

                                                    By: */s/ Nicholas Vassallo*
                                                             NICHOLAS VASSALLO
                                                             Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

It is hereby certified that on June 25, 2021, a copy of this Reply Brief in Support of Defendants' Motion to Dismiss was filed with the Court's CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                                                  */s/ Janee Woodson*
                                                               United States Attorney's Office